UNITED STATES of America

v.

John CROWDER III, Hilary Everett Medlin, Richard White.

No. 3:92–00132.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 8, 1994.

Wendy H. Goggin, Asst. U.S. Atty., Nashville, for plaintiff.

Hal D. Hardin, Asst. U.S. Atty., Nashville, TN, for defendant.

## MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court is the Government's Motion *In Limine* to Admit Statements of Unavailable Declarant (Doc. No. 122).

The Government's motion was argued before the Court on April 4, 1994. The Government seeks to offer into evidence during the trial in this matter testimony given by Jerry Bell ("Bell"), now deceased, under oath to a federal grand jury. Notwithstanding the fact that these statements are hearsay, the Government contends that the testimony is admissible because they were made by an unavailable declarant and are against interest pursuant to Federal Rule of Evidence 804(b)(3). Alternatively, the Government argues that Bell's testimony falls within the residual hearsay exception provided for in Federal Rule of Evidence 804(b)(5).

Defendant Hilary Everett Medlin ("Medlin") objects to the introduction of this testimony as violative of the Confrontation Clause of the Sixth Amendment to the United States Constitution.

## I. BACKGROUND

The office of the Mayor of Nashville received anonymous information about possible illegal activity in the Metropolitan Government of Nashville and Davidson County, Tennessee (Metro) Purchasing Department regarding disclosure of "sealed bids." The information included a photocopy of a handwritten note on a piece of paper with the letterhead "From the Desk of H. Everett Medlin." H. Everett Medlin is one of the defendants in this matter and was the Director of Purchasing for Metro. The note read as follows: "Jerry mark your bid to open 6/2/89. Call me if you don't understand." Attached to the note were photocopies of two bids. "Jerry" refers to the now deceased Jerry Bell, nephew of Medlin.

Based on this anonymously received information, the Tennessee Bureau of Investigation (TBI) and the Federal Bureau of Investigation (FBI) questioned Bell on December 9, 1991. Bell informed the investigators that he was the owner of ABC Pavement Marking Company. Bell provided the following written and signed statement to the investigators:

I, Jerry Bell, hereby state that in 1989 I had a conversation with Everett Medlin, Metro Director of Purchasing, regarding a Metro contract. I wanted to bid on the contract to do Metro work for lining pavement. Medlin, who is my uncle, made copies of the bids submitted by other companies. As I recall I went to Everett's office where he had copies and a note to me in a manilla [sic] envelope.

After getting the other bids I marked my bid just a little lower. I ended up getting the Metro contract and have it as of today. This is the first and only time I have received inside help on getting Metro work.

Jerry E. Bell

12/9/1991

On December 18, 1991, Bell testified in front of a federal grand jury. Bell identified the note with attached bids as having been given to him by Medlin. His testimony was consistent with the statement he provided to the TBI and the FBI. Postal Inspection Service lab analysis identified the handwriting on the note as that of Everett Medlin.

Bell died in 1992.

## II. DISCUSSION

A. Admissibility of Bell's Federal Grand Jury Testimony Pursuant to Federal Rule of Evidence 804(b)(3)

■ The Government submits that Bell's testimony to the federal grand jury is hearsay admissible as statements made against interest by an unavailable declarant under Rule 804(b)(3) of the Federal Rules of Evidence. Rule 804(b)(3) provides in part:

> **Rule 804(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: ...
>
> **(3) Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Fed.R.Evid. 804(b)(3).

It is undisputed that Bell is an unavailable witness. Bell's statements exposed him to potential criminal liability for fraud and to potential civil liability to competing contractors who bid on the project and were disadvantaged by his fraud. Despite these facts, the Court finds that Bell's statements were not against interest.

"The circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true." Fed.R.Evid 804(b)(3) advisory committee's note (citing *Hileman v. Northwest Engineering Co.*, 346 F.2d 668 (6th Cir. 1965)). Bell was terminally ill with cancer when he provided his statement to the TBI and the FBI and gave his testimony before the federal grand jury. Ordinarily under Rule 804(b)(3), exposure to criminal or civil liability would be sufficient to establish the

statement as against interest and guarantee reliability. Analyzing the circumstances of this case, the Court finds that Bell's testimony was not and could not be damaging to him. The fact that Bell's death was imminent at the time the statements were made undermine the satisfaction of the against-interest requirement. It is likely that Bell knew he would not live long enough to be held accountable either criminally or civilly as a result of his statements. Consequently, the Court concludes that Bell's statements were not against interest and do not fall within the hearsay exception provided by Federal Rule of Evidence 804(b)(3).

B. Admissibility of Bell's Federal Grand Jury Testimony Pursuant to Federal Rule of Evidence 804(b)(5)

■ Alternatively, the Government maintains that Bell's testimony can be admitted into evidence under Federal Rule of Evidence 804(b)(5). The Rule provides "other exceptions" to the hearsay rule and reads in part:

[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed.R.Evid. 804(b)(5). A hearsay statement within this Rule must satisfy the requirements of the Confrontation Clause. The Sixth Amendment provides in part that: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend VI.

A hearsay statement of an unavailable declarant, to satisfy the Confrontation Clause, "is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted exception. In

other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Bell's statements do not fall within a firmly rooted exception to the hearsay rule and thus, they are "presumptively unreliable and inadmissible for Confrontation Clause purposes." *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986). For Bell's uncross-examined testimony to meet the requirement of the Confrontation Clause, the Government must "overcome this strong principle of unreliability." *United States v. Gomez–Lemos*, 939 F.2d 326, 332 (6th Cir.1991).

To establish the required "particularized guarantees of trustworthiness" for admissibility under the Confrontation Clause, courts must look at "the relevant circumstances ... that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright*, 497 U.S. 805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638 (1990). Exceptions to the hearsay rule are based on the premise that although generally cross-examination is desirable because it can expose the inaccuracy and untrustworthiness of an unchallenged assertion, there are situations when cross-examination is superfluous because there is no risk of inaccuracy and untrustworthiness. *Id.* at 819, 110 S.Ct. at 3149 (quoting 5 J. Wigmore, Evidence, § 1420, p. 251 (J. Chadbourne rev. 1974)). Specifically, "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." *Id.* at 819, 110 S.Ct. at 3149.

Bell's testimony before the federal grand jury does not meet this standard. The Government has neither defeated the presumption against unreliability nor shown that cross-examination would be of marginal utility. The "truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." *Lee*, 476 U.S. at 541, 106 S.Ct. at 2062.

The Government argues that Bell's statements reflect sufficiently the "guarantees of trustworthiness" required by the Confrontation Clause. The Court finds otherwise. The fact that Bell gave his testimony under oath and subject to the penalty of perjury in a grand jury proceeding is not a significant factor in determining reliability. *Tolbert v. Jago*, 607 F.2d 753, 756 (6th Cir. 1979) (Engel, J., concurring), *cert. denied*, 444 U.S. 1022, 100 S.Ct. 682, 62 L.Ed.2d 655 (1980).

Bell's grand jury testimony is unreliable not only based on what it says, but based on what it does not say. Bell's uncross-examined statements may raise as many questions at trial as they may answer. The unavailable declarant's unchallenged assertions are incomplete and potentially more damaging from the grave than if Bell were to present them from the witness stand. It is in this situation, where the absence of cross-examination leaves doubt as to the reliability of the statements, that the criminal defendant's fundamental right to confrontation must be preserved. *See Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965) (reasoning that "[t]he fact that this right appears in the Sixth Amendment of our Bill Of Rights reflects the belief of the Framers ... that confrontation was a fundamental right essential to a fair trial in a criminal prosecution."). Admission of Bell's statements would violate the Confrontation Clause and hence, the Court finds Bell's federal grand jury testimony inadmissible.

## CONCLUSION

Based on the above analysis, the Government's motion is denied.